METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION, *Plaintiff in Error*, v. ELIZABETH M. MAIN, *Defendant in Error*.

### Division B.

### Opinion Filed May 30, 1925.

1. Where the evidence is conflicting but is sufficient to warrant the finding, the verdict will not be disturbed by the appellate court, no rule of law being violated.

2. Proffered testimony that fairly tends to rebut opposing testimony is admissible.

3. Where the engineer and the conductor made conflicting reports of an accidental killing of a man by a train at a railroad crossing, and in an action by the widow for damages it is shown that the widow endeavored to get the fireman to correct his report to make it correspond with the conductor's report, the conductor's report may be adduced not to prove its truth, but to show that the report was made, and as tending to show that the widow could have known of it and believed it to be true.

A Writ of Error to the Circuit Court for Hillsborough County; L. L. Parks, Judge.

Judgment affirmed.

*Knight, Thompson & Turner* and *Kelly & Sutton,* for Plaintiff in Error;

*A. T. Stewart* and *O. P. Hilburn,* for Defendant in Error.

BROWNE, J.—This is an action to recover on a life insurance policy. The insured was killed by being struck and run over by a moving railroad train.

The policy contained clauses to the effect that it should become null and void if within one year from its issuance the insured should die from his own act whether sane or insane; and that the provision for payment of an increased amount, if the insured died from bodily injury, should not apply, if the injury resulted directly or indirectly from self-destruction whether sane or insane.

The insurance company defended on the ground that the deceased committed suicide by throwing himself in front of a moving railroad train. Upon that issue only the cause was tried.

The evidence is conflicting, and the jury found against the contention of the insurance company. We cannot say that the evidence did not warrant the finding, or that it preponderated in favor of the theory of suicide.

Seventeen assignments of error deal with objections to questions propounded to the plaintiff, Mrs. Elizabeth M. Main, relating to the marital relations of herself and her deceased husband; the purchase and ownership of their home, and his plans for its future improvement; the lack of pressing debts; ordering material from the State Plant Board for the protection of his citrus trees, and other matters tending to show absence of motive for self-destruction.

The plaintiff proved a valid existent policy issued by the defendant life insurance company on the life of her deceased husband, in which she was the beneficiary; that he

had been killed by a moving railroad train; what would be a reasonable attorney's fee, and rested.

Thereupon the defendant introduced evidence to establish that the deceased committed suicide. It was to rebut this contention that the questions objected to were propounded to the plaintiff, and as the facts disclosed by her answers had that tendency, the objections to them were properly overruled.

The defendant produced as a witness Earnest Krupp, the engineer who was running the locomotive when it struck and killed the insured, who testified that his train was running about 35 miles an hour, and when within about 35 feet of him, the deceased looked up at the engine or at him, and when "within about 15 feet of him he put his hands up and threw himself in front of the train and was killed."

Krupp made a similar report in writing, and he and several other witnesses testified that Mrs. Main interviewed them with the object of having Mr. Krupp change his statement as to how the accident occurred.

This testimony unexplained, was damaging to the plaintiff's case. In explanation of it, she testified that when she had these interviews, she had knowledge Conductor W. V. Hull, who had charge of the train that killed the insured, had made a written report to the effect that the deceased "was sitting on fence at first cattle guard South Seffner, and went and got down and apparently fell in guard and was killed." That the purpose of her interviews was to try and have the engineer make his statement conform to the truth as she believed it was stated in the conductor's report.

If such a report by Conductor Hull was in existence, it corroborated Mrs. Main's testimony as to the object of her interviews, and dispelled the sinister aspect of her pur-

pose in which the testimony of the defendant's witnesses placed it.

With regard to Conductor Hull's report, Engineer Krupp was asked:

"Q. From whom did the conductor get his information to make his report if you know?

"A. Why, I don't know where he got that information that he turned in, but I told him down at the—when we all got back there—where the body lay, all how it occurred.

"Q. You gave the conductor the information, did you not? A. As I related it here awhile back.

"Q. Whatever the information was, you gave it to the conductor? A. Yes, sir.

"Q. You were, as far as you know, the only person who saw that accident? A. Yes, sir.

"Q. And it was the conductor's duty to send in a report of the accident? A. Yes, sir, he sends in a telegraphic report of all accidents.

"Q. And the information that he acquired came from you? A. Yes, sir, supposed to come from me."

Further on in his cross-examination, he testified as follows:

"Q. Did you tell the conductor at that time that W. D. Main was sitting on the fence at the first cattle guard south of Seffner and went to get down and apparently fell in the guard and was killed? A. I did not.

"Q. Do you know W. V. Hull's signature when you see it? A. Yes, sir, I was very familiar with it.

"Q. I hand you a paper and ask you if that is his signature at the bottom of that paper? A. I testified the last time that that signature did not look like his on account of the 'L.'

"Q. Is that your testimony now? A. Yes, sir, that is my testimony now.

"Q. In your judgment that is not his signature? A. No, sir, I do not think so, not in my judgment.

"Q. And that is on form 18-A? A. Yes, sir, that is form 18-A.

"Q. A printed report that the conductor sent in? A. Yes, sir.

"Q. And that report does not agree with your statement? A. No, sir."

Thereupon the plaintiff produced as a witness, J. M. Lundy, who was station agent at Seffner when the accident occurred. He identified Conductor Hull's report. He testified that it was a telegraphic report of the accident, made out by Conductor Hull, who signed it in his presence, and he, the witness, sent it in.

In this condition of the testimony, the official report signed by Conductor Hull became very material. If such a report was made, and it contained a statement directly contrary to that of the engineer, Krupp, as to how the accident occurred, Mrs. Main was warranted in trying to have the engineer correct his statement so as to make it conform to the report of Conductor Hull, which she believed to be true. It was not a question of the truth of Hull's statement, but merely that Mrs. Main knew of it, and believed it to be true.

The plaintiff offered in evidence Conductor Hull's report, and it was admitted over the objection of the defendant, the court stating to the jury, "that the contents of this paper are not to be taken by you as substantive evidence in the case, but the contents are only to show and explain the actions of the plaintiff and witness, Elizabeth M. Main, in the several conversations and interviews with the various witnesses in the case, which explains her actions as she claims to get certain statements of certain witnesses in the case corrected and are claimed on the other side of the case

that it was an attempt on her part to obtain a change of the testimony of these same witnesses. Now this paper is offered only for the purpose of explaining her actions in that regard and is not offered as substantive evidence to prove anything else in the case.''

When the court concluded his instructions to the jury with regard to the purpose for which the report was allowed in evidence, Mr. Turner, of counsel for the defendant, said: ''Unless as impeachment of the engineer's statement.'' Whereupon the court added: ''It is offered to impeach the testimony of Engineer Krupp as to the signature of the conductor and is to be received by you gentlemen for that purpose or those two purposes and no other.''

The purpose for which this report was admitted in evidence was a proper one, as it removed from the plaint'.ff the suspicion of a corrupt motive that had been cast upon her by the testimony of Krupp and other witnesses. It established the fact that there was in existence a report differing from the one Engineer Krupp made; that Mrs. Main knew of it; that she believed it was true and desired to have engineer make a statement in accord with what she believed to be true.

Unless the report was introduced in evidence, the jury would have been warranted in believing that no such report existed. For the purpose therefore of corroborating her testimony and explaining her conduct, it was properly admitted in evidence.

Whether or not it was proper to admit it for the purpose of impeachment, it is not necessary to decide, because what was said by the court with regard to that, was at the request of Mr. Turner, counsel for the defendant, and he having asked the court to admit it for the purpose of ''impeachment of the engineer's statement,'' the defendant cannot now be heard to complain.

Other assignments relating to rulings, which if errors are not of sufficient importance to warrant a reversal, do not need to be discussed.

The judgment is affirmed.

WEST, C. J., AND WHITFIELD, ELLIS, TERRELL AND STRUM, J. J., concur.